**Matthew S. Parmet** (Texas Bar # 2406719)
(*seeking admission pro hac vice*)
matt@parmet.law
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228

**Attorneys for Plaintiff**

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Lynnettte Hudson, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>vs.<br><br>Hallmark Behavioral Health @ Lago, LLC d/b/a Hallmark Assisted Living @ Lago, LLC d/b/a Hallmark Assisted Living @ Largo, LLC,<br><br>          Defendant. | Case No. _____<br>FLSA Collective Action<br>FED. R. CIV. P. 23 Class Action<br><br>**Plaintiff's Original Class and Collective Action Complaint for Damages and Declaratory Relief** |

### SUMMARY

1.  Lynnette Hudson brings this lawsuit to recover unpaid overtime wages and other damages owed by Hallmark Behavioral Health @ Lago, LLC d/b/a Hallmark Assisted Living @ Lago, LLC d/b/a Hallmark Assisted Living @ Largo, LLC ("Hallmark").

2.  Hudson and other hourly workers for Hallmark regularly worked in excess of 40 hours in a week.

3.  Hallmark did not pay Hudson and the other workers the proper overtime rate for all of these hours.

4.  Instead, Hallmark paid Hudson and the other workers the same hourly rate, even when they should have received an overtime premium.

5.     Hallmark's failure to pay overtime wages violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, and the Arizona Wage Act, ARS 23-350, *et seq.*

6.     Hallmark also didn't provide Hudson or its other employees with the notices and statements required under the Arizona Fair Wage and Healthy Families Act (the "Arizona Sick Leave Law"), ARS § 23-371, *et seq.*

7.     That is, Hallmark didn't tell Hudson or its other employees about their rights under the Arizona Sick Leave Law.

8.     And Hallmark didn't provide Hudson or its other employees with statements of their earned paid sick time, so that they would know how much they had earned or used, or that were or available to them.

9.     By doing this, Hallmark interfered with the Hudson and its other employees' rights under the Arizona Sick Leave Law.

10.     This action seeks to recover the unpaid overtime wages, earned paid sick time, and other damages owed by Hallmark to these workers, along with the penalties, interest, and other remedies provided by law.

## JURISDICTION & VENUE

11.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12.     This Court has original jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d).

13.     The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Hallmark resides in this District.

15.     Hudson worked for Hallmark in this District.

PARMET PC

16.     Therefore, venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

17.     Hudson was, at all relevant times, an employee of Hallmark.

18.     Hudson was an hourly employee of Hallmark.

19.     Hudson worked for Hallmark from October 2020 to October 2021.

20.     Hudson's written consent is attached as Exhibit A.

21.     Hudson represents at least three classes of similarly situated Hallmark workers.

22.     Hudson represents a collective of similarly situated hourly employees under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former hourly employees of Hallmark working in the United States who were, at any point in the past three years, paid "straight time for overtime."**

23.     Hudson represents a class of similarly situated hourly employees under Arizona law pursuant to Federal Rule of Civil Procedure 23. This "Arizona Overtime Class" is defined as:

> **All current or former hourly employees of Hallmark working in Arizona who were, at any point in the past year, paid "straight time for overtime."**

24.     Hudson represents a class of similarly situated employees under Arizona law pursuant to Federal Rule of Civil Procedure 23. This "Arizona Sick Leave Class" is defined as:

> **All current or former employees of Hallmark working in Arizona at any point in the past three years.**

25.     Together, throughout this Complaint, the Arizona Overtime Class members and Arizona Sick Leave Class members are referred to as the "Arizona Class Members."

PARMET PC

26.     Together, throughout this Complaint, the FLSA Collective members and Arizona Class Members are referred to as the "Similarly Situated Workers."

27.     **Hallmark Behavioral Health @ Lago, LLC d/b/a Hallmark Assisted Living @ Lago, LLC d/b/a Hallmark Assisted Living @ Largo, LLC ("Hallmark")** is an Arizona limited liability company.

28.     Hallmark's headquarters and principal place of business is in Maricopa County, Arizona.

29.     Hallmark may be served by service upon its registered agent, **Mike Rogers, 1550 E. McKellips Rd., Ste. 109, Mesa, AZ 85203**, or by any other method allowed by law.

## COVERAGE UNDER THE FLSA

30.     At all relevant times, Hallmark was an employer of Hudson within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

31.     At all relevant times, Hallmark was and is an employer of the Similarly Situated Workers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

32.     Hallmark was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

33.     During at least the last three years, Hallmark has had gross annual sales in excess of $500,000.

34.     Hallmark was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

35.     Hallmark employs many workers, including Hudson, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

36.     The goods and materials handled, sold, or otherwise worked on by Hudson, and other Hallmark employees and that have been moved in interstate

PARMET PC

commerce include, but are not limited to, prescription and non-prescription medical supplies and equipment, and pharmaceuticals.

## FACTS

37.    Hallmark supplies in-home caregivers and caregiving services to its clients.

38.    For at least the last three years, Hallmark has employed 15 or more employees.

39.    Hudson was an hourly employee of Hallmark.

40.    Hallmark never paid Hudson a salary.

41.    Hallmark never paid Hudson on a fee basis.

42.    Hallmark paid Hudson by the hour.

43.    Hallmark paid Hudson $15 per hour.

44.    Hudson reported the hours she worked to Hallmark on a regular basis.

45.    Hudson's hours are reflected in Hallmark's records.

46.    Hallmark paid Hudson at the same hourly rate for all hours worked, including those in excess of 40 in a week.

47.    Hudson normally worked more than 40 hours in a week.

48.    For example, for the bi-monthly pay period ending May 31, 2021, Hudson worked 155 hours for Hallmark.

49.    For that pay period, Hallmark paid Hudson at her hourly rate of $15 per hour for all 155 hours worked:

| Earnings and Hours | Qty | Rate | Current | YTD Amount |
|---|---|---|---|---|
| Hourly | 155:00 | 15.00 | 2,325.00 | 20,561.50 |
| Holiday Pay | | | | 180.00 |
| | 155:00 | | 2,325.00 | 20,741.50 |

50.    Thus, in each of the weeks for the May 31, 2021, pay period, Hudson worked more than 40 hours, but was not paid an overtime premium for any overtime hour worked.

PARMET PC

51.    Rather than receiving time-and-a-half as required by the FLSA for all hours over 40 in a workweek, Hudson only received "straight-time" pay for overtime hours worked.

52.    This "straight-time-for-overtime" payment scheme violates the FLSA.

53.    This "straight-time-for-overtime" payment scheme violates Arizona law.

54.    Hallmark was aware of the overtime requirements of the FLSA.

55.    Hallmark was aware of the overtime requirements of Arizona law.

56.    Hallmark nonetheless failed to pay certain hourly employees, such as Hudson, overtime.

57.    Hallmark's failure to pay overtime to these hourly workers was, and is, a willful violation of the FLSA.

58.    Hudson started working for Hallmark in October 2021.

59.    When Hudson started working for Hallmark, Hallmark did not provide her with notice of the Arizona Sick Leave Law.

60.    When Hudson started working for Hallmark, Hallmark did not provide her with any notice of her rights under the Arizona Sick Leave Law.

61.    Throughout her employment with Hallmark, Hallmark did not provide Hudson with the amount of earned paid sick time available to her.

62.    Throughout her employment with Hallmark, Hallmark did not provide Hudson with the amount of earned paid sick time taken by her.

63.    Throughout her employment with Hallmark, Hallmark did not provide Hudson with the amount of earned paid sick time she had received.

64.    Hallmark did not provide any notice of Hudson's earned paid sick time amounts in an attachment to her regular paycheck.

65.    Hallmark did not provide any notice of Hudson's earned paid sick time amounts in her regular paycheck.

PARMET PC

66.    For example, Hudson's paycheck for the bi-monthly pay period ending May 31, 2021, contained no reference to earned, used, or available paid sick time at all.

67.    Without notification of her rights under the Arizona Sick Leave Law, Hudson couldn't exercise those rights.

68.    Without knowing the amounts of her earned paid sick time, Hudson couldn't use her earned paid sick time.

69.    Without Hallmark telling her the amount of her earned paid sick time and used earned paid sick time, Hudson had no way to exercise her rights under the Arizona Sick Leave Law.

70.    Hallmark's refusal to provide notices and statements under the Arizona Sick Leave Law interfered with Hudson's rights under the law.

71.    Hudson was entitled to earn a minimum of one hour of earned paid sick time for every 30 hours she worked for Hallmark.

72.    Hallmark's failure to provide notice of the Arizona Sick Leave Law interfered with Hudson's rights under the Arizona Sick Leave Law.

73.    Hallmark's failure to provide earned sick time statements interfered with Hudson's rights under the Arizona Sick Leave Law.

74.    Hallmark's failure to provide notice of the Arizona Sick Leave Law was, and is, a willful violation of the Arizona Sick Leave Law.

75.    Hallmark's failure to provide notice of the Arizona Sick Leave Law was, and is, a willful violation of the Arizona Sick Leave Law.

## COLLECTIVE ACTION ALLEGATIONS

76.    Hallmark's illegal "straight time for overtime" policy extends well beyond Hudson.

77.    It is the "straight time for overtime" payment plan that is the "common policy or plan that violate[s] the law." (*McDonald v. Ricardo's on the Beach, Inc.*, No. CV

11-93366 PSG (MRWx),  2013 WL 228334, at *2 (C.D. Cal. Jan. 22, 2013) [internal quotations omitted].)

78.    The illegal pay practices Hallmark imposed on Hudson were likewise imposed on the FLSA Collective Members.

79.    Hudson employs many other workers who worked over 40 hours per week and were subject to Hallmark's same pattern, practice, and policy of failing to pay overtime at 1.5x the workers' regular rates of pay.

80.    Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

81.    Based on her experience and tenure with Hallmark, Hudson is aware that Hallmark's illegal practices were imposed on the FLSA Collective Members.

82.    These workers were similarly situated within the meaning of the FLSA.

83.    Hallmark's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the FLSA Collective Members.

CLASS ACTION ALLEGATIONS

84.    The illegal practices Hallmark imposed on Hudson were likewise imposed on the Arizona Overtime and Sick Leave Class Members.

85.    Numerous other individuals who worked with Hudson were were not properly compensated for all hours worked and were not provided sick leave notices and compensation as required by Arizona law.

86.    The Arizona Overtime and Sick Leave Classes are so numerous that joinder of all members of each or both classes is impracticable.

87.    Hallmark imposed uniform practices and policies on Hudson and the Arizona Overtime and Sick Leave Class Members regardless of any individualized factors.

PARMET PC

88.     Based on her experience and tenure with Hallmark, Hudson is aware that Hallmark's illegal practices were imposed on the Arizona Overtime and Sick Leave Class Members.

89.     Arizona Overtime Class Members were all not paid proper overtime when they worked in excess of 40 hours per week.

90.     Arizona Sick Leave Class Members were all denied overtime pay and not provided notices in accordance with Arizona law.

91.     Hallmark's failure to pay wages and overtime compensation in accordance with Arizona law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Arizona Overtime Class Members.

92.     Hallmark's failure to provide sick leave and notices in accordance with Arizona law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Arizona Sick Leave Class Members.

93.     Hudson's experiences are therefore typical of the experiences of the Arizona Overtime and Sick Leave Class Members.

94.     Hudson has no interest contrary to, or in conflict with, the members of the Arizona Overtime and Sick Leave Classes. Like each member of the proposed classes, Hudson has an interest in obtaining the unpaid overtime wages and other damages owed under the law.

95.     A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

96.     Absent this action, many Arizona Overtime and Sick Leave Class members likely will not obtain redress of their injuries and Hallmark will reap the unjust benefits of violating Arizona law.

97.    Furthermore, even if some of the FLSA and Arizona Class members could afford individual litigation against Hallmark, it would be unduly burdensome to the judicial system.

98.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

99.    The questions of law and fact common to each of the Arizona Overtime and Sick Leave Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

a.    Whether the Arizona Overtime Class Members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

b.    Whether Hallmark's "straight time for overtime" pay scheme, without any overtime premium regardless of the number of hours worked, violated the Arizona Wage Act;

c.    Whether Hallmark knowingly benefitted at the expense of the Arizona Overtime and Sick Leave Class Members; and

d.    Whether allowing Hallmark to retain the benefit it obtained at the expense of the Arizona Overtime and Sick Leave Class Members would be unjust.

e.    Whether Hallmark's decision not to issue notice under the Arizona Sick Leave Law was willful; and

f.    Whether Hallmark's decision not to provide statements of earned, used, and available sick time under the Arizona Sick Leave Law was willful.

100.    Hudson's claims are typical of the Arizona Overtime and Sick Leave Class Members. Hudson, and the Arizona Overtime and Sick Leave Class Members

**PARMET PC**

1 have all sustained damages arising out of Hallmark's illegal and uniform employment
2 policies.

3      101.   Hudson knows of no difficulty that will be encountered in the
4 management of this litigation that would preclude its ability to go forward as a class
5 or collective action.

6      102.   Although the issue of damages may be somewhat individual in character,
7 there is no detraction from the common nucleus of liability facts. Therefore, this issue
8 does not preclude class or collective action treatment.

9               **FIRST CAUSE OF ACTION—VIOLATIONS OF THE FLSA**

10      103.   Hudson incorporates each other allegation.

11      104.   Hallmark has violated, and is violating, section 7 of the FLSA, 29 U.S.C.
12 § 207, by compensating employees on an hourly basis in an enterprise engaged in
13 commerce or in the production of goods for commerce within the meaning of the
14 FLSA for workweeks longer than 40 hours without compensating the FLSA Collective
15 members for their employment in excess of 40 hours per week at rates no less than 1.5
16 times the regular rates for which they were employed.

17      105.   Hallmark knowingly, willfully, or in reckless disregard carried out this
18 illegal pattern and practice of failing to pay the FLSA Collective members overtime
19 compensation.

20      106.   Hallmark's failure to pay overtime compensation to these FLSA
21 Collective members was neither reasonable, nor was the decision not to pay overtime
22 made in good faith.

23      107.   Accordingly, Hudson and the FLSA Collective members are entitled to
24 overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus
25 liquidated damages, attorney's fees, and costs.

26          **SECOND CAUSE OF ACTION—VIOLATIONS OF THE ARIZONA WAGE ACT**

27      108.   Hudson incorporates all other allegations.

28

**PARMET PC**

109.   The conduct alleged in this Complaint violates the Arizona Wage Act, ARS 23-350, *et seq.*

110.   Hallmark was and is an "employer" within the meaning of the Arizona Wage Act. (ARS § 23-350(3).)

111.   At all relevant times, Hallmark employed Hudson and each other Arizona Overtime member as "employees" within the meaning of the Arizona Wage Act. (ARS § 23-350(2).)

112.   Hudson and the other Arizona Overtime Class members were required by law to be paid overtime wages for all overtime hours worked.

113.   Hudson and the other Arizona Overtime Class members had a reasonable expectation Hallmark would pay them wages as required by the FLSA.

114.   Hudson and the other Arizona Overtime Class members had a reasonable expectation Hallmark would pay them wages as required by federal law.

115.   Hudson and the other Arizona Overtime Class members had a reasonable expectation Hallmark would pay them wages as required by Arizona law.

116.   Hudson and the other Arizona Overtime Class members had a reasonable expectation Hallmark would pay them at a rate at least 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek.

117.   Within the applicable limitations period, Hallmark had a policy and practice of failing to pay proper overtime to the Arizona Overtime Class members for their hours worked in excess of 40 hours per week.

118.   The wages and overtime owed to Hudson and each other Arizona Overtime member were due to be paid not later than 16 days after the end of the of the most recent pay period. (ARS § 23-351(C)(3).)

119.   The wages and overtime owed to Hudson and each other Arizona Overtime member who left the employment of Hallmark were due to be paid not later seven days after termination, or at the end of the next regular pay period. (ARS § 23-353(A)-(B).)

120.    The Arizona Wage Act prohibits an employer from withholding or diverting any portion of an employee's wages unless they are required or empowered to do so by state or federal law, or the employee has authorized the withholding in writing. (ARS § 23-352.)

121.    Hallmark was not required under Arizona or federal law to withhold the wages and overtime pay due to Hudson and the Arizona Overtime Class members.

122.    Hallmark was not empowered under Arizona or federal law to withhold the wages and overtime pay due to Hudson and the Arizona Overtime Class members.

123.    Neither Hudson nor the Arizona Overtime Class members authorized Hallmark to withhold the wages and overtime pay due to them.

124.    Hallmark has not paid these overtime wages to Hudson and each other Arizona Overtime member.

125.    As a result of Hallmark's failure to pay proper overtime to Hudson and the Arizona Overtime Class members for work performed in excess of 40 hours in a workweek, Hallmark violated the Arizona Wage Act.

126.    Hudson and the Arizona Overtime Class members are entitled to overtime wages under Arizona law in an amount equal to three times their unpaid wages, plus attorney's fees and costs. (ARS § 23-355(A).)

### THIRD CAUSE OF ACTION—

### FAILURE TO PROVIDE NOTICE OF ARIZONA SICK LEAVE LAW

127.    Hudson incorporates all other allegations.

128.    The conduct alleged in this Complaint violates the Arizona Sick Leave Law, ARS 23-371, *et seq.*

129.    Hallmark was and is an "employer" within the meaning of ARS § 23-371(G).

130.    At all relevant times, Hallmark employed Hudson and each other Arizona Sick Leave Class member as "employees" within the meaning of ARS § 23-362. (ARS § 23-371(E)-(F).)

PARMET PC

**PARMET PC**

131.   Hallmark was required to provide written notice of the Arizona Sick Leave Law to all employess, including Hudson and the Arizona Sick Leave Class members, at the commencement of employment or by July 1, 2017, whichever was later.

132.   The notice required by the Arizona Sick Leave Law is prescribed by ARS § 23-375(A).

133.   The notice required by the Arizona Sick Leave Law must be in both English and Spanish. ARS § 23-375(B).

134.   Hallmark did not provide notice of the Arizona Sick Leave law in the required form to Kapzinsky or the Arizona Sick Leave Class members.

135.   Hallmark did not provide notice of the Arizona Sick Leave law within the required time to Kapzinsky or the Arizona Sick Leave Class members.

136.   Hallmark did not provide notice of the Arizona Sick Leave law in the required languages to Kapzinsky or the Arizona Sick Leave Class members.

137.   Hallmark knew of the requirements of the Arizona Sick Leave Law.

138.   Hallmark willfully carried out this illegal pattern and practice of failing to provide its employees with notice of the Arizona Sick Leave Law.

139.   Each one of Hallmark's failures to provide the notices required by the Arizona Sick Leave Law were willful.

140.   Accordingly, Hudson and the Arizona Sick Leave Class members are entitled to civil penalties for each violation of ARS § 23-375(A)-C), for Hudson and each Arizona Sick Leave Class member. (ARS §§ 23-364(F), 375.)

### FOURTH CAUSE OF ACTION—

### FAILURE TO PROVIDE STATEMENTS UNDER ARIZONA SICK LEAVE LAW

141.   Hudson incorporates all other allegations.

142.   Hallmark was required to provide, with each regular paycheck, the amount of earned paid sick time available to each employee, the amount of earned

paid sick time taken by the employee to day in the year, and the amount of pay the employee has received as earned paid sick time. (ARS § 23-375(C).)

143.    Hallmark did not provide notice as required by ARS § 23-375(C) to Kapzinsky or the Arizona Sick Leave Class members with each regular paycheck.

144.    Hallmark did not provide any notice as required by ARS § 23-375(C) to Kapzinsky or the Arizona Sick Leave Class members.

145.    Hallmark knew of the requirements of the Arizona Sick Leave Law.

146.    Hallmark willfully carried out this illegal pattern and practice of failing to provide its employees with notice as required by ARS § 23-375(C).

147.    Each one of Hallmark's failures to provide the notices required by the Arizona Sick Leave Law were willful.

148.    Accordingly, Hudson and the Arizona Sick Leave Class members are entitled to civil penalties for each violation of ARS § 23-375(A)-C), for Hudson and each Arizona Sick Leave Class member. (ARS §§ 23-364(F), 375.)

**FIFTH CAUSE OF ACTION—**

**INTERFERENCE WITH RIGHTS UNDER ARIZONA SICK LEAVE LAW**

149.    Hudson incorporates all other allegations.

150.    At all relevant times, Hallmark employed and employs 15 or more employees.

151.    Hallmark's employees, including Hudson and the Arizona Sick Leave Class members, were all entitled to accrue earned paid sick time, as defined by ARS § 23-371(D).

152.    Under the Arizona Sick Leave Act, Hallmark's employees not exempt under the FLSA were entitled to accrue a minimum of one hour of earned paid sick time for every 30 hours worked. (ARS § 23-372(A).)

153.    Under the Arizona Sick Leave Act, Hallmark's employees exempt under the FLSA were entitled to accrue overtime at the rates set forth by ARS § 23-372(D)(3).)

154.    It is unlawful for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right protected under the Arizona Sick Leave Law.

155.    Hallmark's knew the requirements of the Arizona Sick Leave Law.

156.    Through its acts and omissions, Hallmark willfully interfered with, restrained, and denied the rights of Kapzynsky and the Arizona Sick Leave Class members to earn and exercise their rights to earned paid sick time.

157.    Hudson and the Arizona Sick Leave Class members are entitled to the balance of their earned paid sick time owed, interest, and an amount equal to two times their earned paid sick time owed, plus attorney's fees and costs, along with any penalties deemed appropriate. (ARS § 23-364(F)-(G).)

SIXTH CAUSE OF ACTION—

DECLARATORY JUDGMENT UNDER ARIZONA SICK LEAVE LAW

158.    Hudson incorporates all other allegations.

159.    Hudson requests her and the Arizona Sick Pay Class's rights be established by a court of competent jurisdiction, pursuant to the Uniform Declaratory Judgments Act § 12-1831, *et seq.*

160.    Hallmark's acts and omissions violate the Arizona Sick Leave Law.

161.    Hallmark's acts and omissions establish a pattern and practice of knowing, willful, and reckless disregard of the requirements of the Arizona Sick Leave Law.

162.    The Arizona Sick Leave Law provides for special monitoring and inspections of any employer who violates the recordkeeping, posting, or other requirements of the Arizona Sick Leave Law as established by the Industrial Commission of Arizona. (ARS §§ 23-364(F), 375.)

163.    Without special monitoring and inspections, Hallmark will continue to violate the Arizona Sick Leave Law.

PARMET PC

164.   Special monitoring and inspections under the Arizona Sick Leave Law may be ordered by a court of competent jurisdiction. (ARS §§ 23-364(F), 375.)

165.   Hudson seeks a declaration that:

a.   Hallmark's acts and omissions violated the Arizona Sick Leave Law;

b.   Hudson and the Arizona Sick Leave Class members are entitled to earned paid sick leave under the Arizona Sick Leave Law;

c.   Hudson and the Arizona Sick Leave Class members are entitled to recover for earned but unpaid sick leave under the Arizona Sick Leave Law;

d.   Hudson and the Arizona Sick Leave Class members are entitled to recover an additional amount equal to twice their earned but unpaid sick leave under the Arizona Sick Leave Law;

e.   Hudson and the Arizona Sick Leave Class members are entitled to interest on their earned but unpaid sick leave under the Arizona Sick Leave Law;

f.   Hudson and the Arizona Sick Leave Class members are entitled to penalties for their earned by unpaid sick leave under the Arizona Sick Leave Law, as set forth in ARS § 23-364(F);

g.   Hallmark's acts and omissions violating the Arizona Sick Leave Law were willful;

h.   Special monitoring and inspections of Hallmark are appropriate to ensure Hallmark's compliance with the Arizona Sick Leave Act; and

i.   Hudson and the Arizona Sick Leave Class members are entitled to recover their attorneys' fees and costs for bringing and maintaining this action; and

j.   Any other relief which the Court deems proper.

**SEVENTH CAUSE OF ACTION—UNJUST ENRICHMENT**

166.  Hudson incorporates all other allegations.

167.  Hallmark's acts and omissions in denying proper overtime pay to Hudson and the Arizona Overtime Class members was done knowingly, willfully, or with reckless disregarding of the rights of Hudson and the Arizona Sick Leave Class members.

168.  Hallmark's acts and omissions in denying sick leave pay to Hudson and the Arizona Sick Leave Class members was done knowingly, willfully, or with reckless disregarding of the rights of Hudson and the Arizona Sick Leave Class members.

169.  As a result of its unlawful acts and omissions, Hallmark received substantial benefit in the form of financial compensation that rightfully belonged to Hudson and the Arizona Class Members.

170.  It would be unjust to allow Hallmark to retain these benefits, which were gained through unlawful means, including but not limited to, failing to pay Ker and the Arizona Class members the wages, overtime, and earned paid sick leave they were entitled to under Arizona law.

171.  Hallmark has been unjustly enriched by its unlawful acts and omissions.

**CONTINUING COURSE OF CONDUCT**

172.  Since before Hudson began working for Hallmark until at least after she left, Hallmark subjected Hudson and the Arizona Sick Leave Class members to the illegal and improper acts and omissions violating the Arizona Sick Leave Law.

173.  Hallmark's violations of the Arizona Sick Leave Law were thus part of a continuing course of conduct.

174.  Hallmark's continuing course of conduct regarding the Arizona Sick Leave Law entitles Hudson and each Arizona Sick Leave Class member to recover for all such violations, regardless of the date they occurred. (ARS § 23-364(H).)

PARMET PC

## DAMAGES

175. Hallmark's acts and omissions, individually and collectively, caused Hudson and the Similarly Situated Workers to sustain legal damages.

176. Hudson and the FLSA Collective members are entitled to overtime wages in an amount equal to 1.5 times their regular rates of pay, plus liquidated damages, attorney's fees, and costs. (29 U.S.C. § 216(b).)

177. Hudson and the Arizona Overtime Class members are entitled to overtime wages under the Arizona Wage Act in an amount equal to three times their unpaid wages, plus attorney's fees and costs. (ARS § 23-355(A).)

178. Hudson and the Arizona Sick Leave Class members are entitled to earned paid sick time owed under the Arizona Sick Leave Act in an amount equal to three times their unpaid sick time, plus attorney's fees and costs. (ARS § 23-364(F)-(G).)

179. Hudson and the Arizona Sick Leave Class members are entitled to penalties in the amounts set forth by ARS § 23-364(F), of not less than $250 for Hallmark's initial violation, and $1,000 for its subsequent or willful violations of the Arizona Sick Leave Law.

180. Hudson and the Arizona Class members are entitled to recover for Hallmark's unjust enrichment, including restitution and penalties.

181. Hudson and the Similarly Situated Workers are entitled to recover attorneys' fees and costs of court.

182. Hudson and the FLSA Collective members are entitled to recover liquidated damages under the FLSA.

183. Hudson and the Arizona Overtime Class members are entitled to treble damages under the Arizona Wage Act.

184. Hudson and the Arizona Sick Leave Class members are entitled to treble damages, interest, attorneys' fees, and costs under the Arizona Sick Leave Law.

185. Hudson and the Arizona Sick Leave Class members are entitled to costs under the Uniform Declaratory Judgments Act. (ARS 12-1840.)

186. Hudson and the Arizona Class members are entitled to exemplary damages on their unjust enrichment claim.

187. Hudson and the Similarly Situated Workers are entitled to pre- and post-judgment interest at the maximum legal rates.

188. A constructive trust should be imposed on Hallmark, and the Court should sequester any benefits or money wrongfully received by Hallmark at the expense of Hudson and the Arizona Class members.

**RELIEF SOUGHT**

189. Hudson prays for judgment against Hallmark as follows:

    a.     For an order certifying a collective action for the purposes of claims under the FLSA;

    b.     For an order certifying a class action for the purposes of the claims under Arizona law;

    c.     For an order finding Hallmark liable for violations of state and federal wage laws with respect to Hudson and all class members covered by this case;

    d.     For a judgment awarding all unpaid wages, liquidated damages, and penalty damages, to Hudson and all FLSA Collective members covered by this case;

    e.     For a judgment awarding all unpaid wages, treble damages, penalty damages, and punitive damages, to Hudson and all Arizona Overtime Class members covered by this case;

    f.     For a judgment awarding all earned paid sick time, treble damages, penalty damages, punitive damages, and interest to Hudson and all Arizona Sick Leave Class members covered by this case;

    g.     For a declaratory judgment imposing special monitoring and inspections on Hallmark;

PARMET PC

h.  For an order finding Hallmark was unjustly enriched by its violations of Arizona law with respect to Hudson and all Arizona Class members covered by this case;

i.  For an order imposing a constructive trust on Hallmark and sequestering the benefits and monies that it wrongfully obtained at the expense of Hudson and the Arizona Class members;

j.  For an order awarding restitution, penalties, and exemplary damages to Hudson and all Arizona Class members covered by this case;

k.  For a judgment awarding costs of this action to Hudson and all class members covered by this case;

l.  For a judgment awarding attorneys' fees to Hudson and all class members covered by this case;

m.  For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Hudson and all class members covered by this case; and

n.  For all such other and further relief as may be necessary and appropriate.

Date: _Dec. 30, 2021_

Respectfully submitted,

*/s/ Matthew S. Parmet*

By: _____

**Matthew S. Parmet**
**PARMET PC**

**Attorneys for Plaintiff**